USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/5/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID CHRISTOPHER FIGUEROA,

                Plaintiff,

-against-

THE COUNTY OF ROCKLAND, DOCTOR DOMINICK PIESANTE OF THE ROCKLAND COUNTY JAIL, LT. JOHN BYRON OF THE ROCKLAND COUNTY JAIL, SERGEANT LOUIS FALCO OF THE ROCKLAND COUNTY JAIL, SERGEANT JOHN HICKEY OF THE ROCKLAND COUNTY JAIL, CORRECTIONAL OFFICER BILL McLAUGHLIN OF THE ROCKLAND COUNTY JAIL, NURSE MARIAMMA JACOB OF THE ROCKLAND COUNTY JAIL,

                Defendants.

16-cv-6519 (NSR)

OPINION AND ORDER

---

NELSON S. ROMÁN, United States District Judge

      Plaintiff David Christopher Figueroa ("Plaintiff"), proceeding *pro se*, commenced this action on August 17, 2016, pursuant to 42 U.S.C. § 1983 for alleged Eighth, Fourteenth, First, and Sixth Amendment violations. (*See* Complaint ("Compl."), (ECF No. 1).) Thereafter, Plaintiff amended his Complaint two times, ultimately alleging his claims against Defendants The County of Rockland ("Rockland County"), Lieutenant John Byron ("Byron"), Sergeant Louis Falco ("Falco"), Sergeant John Hickey ("Hickey"), Bill McLaughlin ("McLaughlin"), Nurse Mariamma Jacob ("Jacob") (collectively, the "County Defendants"), and Dominick Piacente ("Dr. Piacente")[1], (*See* Second Amended Complaint (the "SAC") (ECF No. 11).)

---

[1] Dr. Piacente is sued herein as "Dominick Piesante."

1

Before the Court are the County Defendants and Dr. Piacente's motions to dismiss the SAC for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "County Defendants' Motion" and "Dr. Piacente's Motion", respectively). (*See* The County Defendants' Brief in Support of the Motion to Dismiss ("Cnty. Defs. Br.") (ECF No. 28); Dr. Piacente's Brief in Support of the Motion to Dismiss ("Def. P. Br.") (ECF No. 36).) For the following reasons, the County Defendants' Motion is GRANTED and Dr. Piacente's Motion is DENIED.[2]

**FACTUAL BACKGROUND**

The following facts are taken from Plaintiff's SAC and are accepted as true for purposes of this motion.[3]

Plaintiff is a *pro se* detainee who was housed at Rockland County Correctional Center ("Rockland County Jail"), a holding facility within the New York State Department of Corrections and Community Supervision ("DOCCS"), at the time of his alleged injury. Plaintiff initiated this action for alleged violations of his constitutional rights to adequate medical care, sanitary conditions of confinement, and access to the courts. (*See* SAC at 2-7.)[4] The conduct that forms the basis of Plaintiff's SAC occurred between July 3, 2016 and July 20, 2016. (*Id.*)

On July 3, 2016 during the "3 to 11 shift"[5] Plaintiff was injured in intake housing while he was doing push-ups and struck his hand on a bolt. (*See* SAC at 4.) As a result, Plaintiff sustained

---

[2] Plaintiff has failed to oppose either motion. (*See* ECF Nos. 26-39.) The Court discovered that Plaintiff likely did not receive copies of either of the motion papers. Based on the docket, it appears that as of February 8, 2017, Plaintiff was no longer being held at Rockland County Jail, as this Court's denial of Plaintiff's application for appointment of counsel was returned. It is Plaintiff's obligation to update the Court when his address changes and to prosecute his claims. The last time Plaintiff communicated with this Court at all was in his request for the appointment of counsel filed on January 11, 2017, more than a year and a half ago. Nevertheless, the Court hereby deems the motions fully submitted and renders a decision on the merits.
[3] The Court assumes the truth of the facts alleged in Plaintiff's Complaint for purposes of this motion only. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[4] As Plaintiff is proceeding *pro se* and his Complaint is the standard, fillable form amended complaint, all citations thereto will be to pages as listed on ECF, not paragraphs.
[5] Plaintiff does not indicate whether the shift was 3:00 p.m. through 11:00 p.m. or 11:00 p.m. to 3:00 a.m.

2

a half an inch gash on his hand that was "bleeding badly." (*Id.*) Immediately following the injury, Plaintiff called out for assistance but no one appeared "until [he] was kicking on cell [sic] door . . . ." (*Id.*) McLaughlin then came to Plaintiff's aide, which was allegedly 20 minutes after the injury occurred. (*Id.*)

Plaintiff alleges that he had no toilet paper and his clothes were in the laundry, so he had no way to stop the bleeding. (*Id.*) When McLaughlin arrived, Plaintiff asked him for some toilet paper to stop the bleeding, but McLaughlin told him to hold his hand over the toilet bowl and let the blood drip. (*Id.*) Plaintiff then asked to go to medical and McLaughlin told him, "medical is busy and I'll call them when I'm good and ready." (*Id.*)

During that same "3 to 11 shift", Plaintiff was taken to medical and seen by Nurse Jacob. (*Id.* at 5.) Plaintiff requested that he be sent to the hospital for stitches, but Jacob advised that she did not have authority to send him to the hospital – only a doctor did – and he was not in. (*Id.*) She further informed Plaintiff that she did not think the doctor would approve sending him to the hospital for 3-4 stitches. (*Id.*) Plaintiff then described that intake was "filthy" and that he was "afraid of catching something," particularly because another detainee, Brad Smith, was "throwing his fecal matter around", the staff was making the detainees use the same equipment to clean their cells that were used to clean Mr. Smith's fecal matter, and that the brooms and mops were contaminated.[6] (*Id.*) Before Plaintiff left medical, Jacob placed "a paper stitch" on Plaintiff's gash and told him she would have him meet with the doctor when he arrived. (*Id.*) Plaintiff alleges that Jacob's decision not to send him to the hospital amounts to deliberate indifference. (*Id.*)

Within the following two days[7] Plaintiff was examined by Dr. Piacente. (*Id.* at 8.) Plaintiff requested that Dr. Piacente send him to the hospital because he wanted to have his hand stitched,

---

[6] Plaintiff does not allege how Jacob responded to this information or whether he claims that she violated his constitutional rights in relation to him telling her this information.
[7] Plaintiff does not specify whether he met with Dr. Piacente on July 4, 2016 or July 5, 2016. (*See* SAC at 8.)

3

but Dr. Piacente denied the request. (*Id.*) Instead, Dr. Piacente agreed that Plaintiff did "need stitches," but said that he was "a big boy and that [he] could handle it." (*Id.*) Dr. Piacente also said that "it would be a waste of taxpayer money to send [Plaintiff] to the hospital for [three] stitches." (*Id.*) When Plaintiff explained the allegedly unsanitary conditions he was exposed to in intake housing and that he wanted the stitches to avoid infection, Dr. Piacente agreed that "jails are some of the filthiest places" but stated that there was nothing they could do about some of the mentally ill detainees. (*Id.*) Dr. Piacente then reiterated that he would not send Plaintiff to the hospital for three stitches but would porivde paper stitches instead. (*Id.*) Dr. Piacente thus tended to Plaintiff's wound by giving him a paper stitch. (*Id.*) Reading Plaintiff's SAC liberally, Dr. Piacente had attempted four different paper stitches because they "kept falling off." (*Id.*) Plaintiff claims that Dr. Piacente denied him adequate medical care and did "nothing to help prevent infection." (*Id.* at 9.)

A few days later, on July 6, 2016, Plaintiff was seen by nurse Elizabeth Handler to examine his injury. (*Id.*) Nurse Handler asked Plaintiff why he did not have any stitches on his hand and Plaintiff explained Dr. Piacente's refusal to send him to the hospital two days earlier. (*Id.*) Nurse Handler then ordered Plaintiff to be sent to the hospital immediately because his hand had become infected with cellulitis, or staph infection. (*Id.*) Plaintiff was unable to receive stitches at the time, due to the stage of his infection, but was instead prescribed Percocet for pain and various antibiotics to kill the infection. (*Id.*) Plaintiff contends that his subsequent infection could have been avoided if Dr. Piacente had sent him to the hospital when he first saw him. (*Id.*) Plaintiff was sent back to the hospital the following day as well, as the infection had not subsided. (*Id.* at 9-10.) Plaintiff was again given antibiotics to fight the infection, but was also prescribed hydromorphone for the pain, and now contends that he suffers from an addiction to hydromorphone. (*Id.* at 10.)

Shortly after he was injured, Plaintiff began filing grievances related to his living conditions, including that it was "extremely hot", he had "bite marks up and down [his] leg", there was "no ventilation", "a gnats['] nest growing in the shower", "male semen on the walls", and "fecal matter being thrown around by inmate Brad Smith." (*Id.* at 6.) Plaintiff also claimed that there was "cross contamination between brooms, maps and dust pans." (*Id.*) Moreover, Plaintiff also complained that he could not see through his mirror and thus cut himself while he was shaving. (*Id.*) Plaintiff claims that Byron was deliberately indifferent to the alleged inhumane conditions that existed at the Rockland County Jail. (*Id.*) Plaintiff also contends that Byron "knew that [he] later did not receive adequate medical care when injury happen [sic] to [him] and [he] did nothing to move [Plaintiff] away from such bacteria infested area." (*Id.*) Plaintiff claims that Falco and Hickey were also deliberately indifferent to his conditions of confinement because they knew of the alleged unsanitary conditions in intake housing, but "did not care and they knew [Plaintiff] had an open gash on [his] hand", but when he returned from the hospital, they "put [him] back in intake housing." (*Id.*)

Plaintiff also claims that Byron interfered with his grievance process insofar as Byron "mess[ed] with the mail because some of [Plaintiff's] grievances did not go to the C.O.R.C." (*Id.* at 7.)

On July 12, 2016, Plaintiff asked Hickey to take a photograph of his injury, but he declined, allegedly stating that "it would never happen." (*Id.*) On July 20, 2016, Plaintiff also asked Falco to take the photograph of his injury and Falco allegedly told Plaintiff to "fuck off." (*Id.*) Plaintiff claims that their refusal to take a photograph of his injuries interfered with his ability to support his Section 1983 claims. (*Id.*)

5

## DISCUSSION

I. **Legal Standard**

   A. **Rule 12(b)(6)**

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*Pro se* pleadings are afforded great solicitude, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and should be interpreted "to raise the strongest arguments that they suggest," *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleading must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the Court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

II. **Deliberate Indifference**

Generally speaking, prisoners should not "be deprived of their basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health." *Darnell v.*

*Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)). As to convicted inmates, claims for deliberate indifference are born out of the Eighth Amendment's protection against cruel and unusual punishment. *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (citing *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). The claims of deliberate indifference for pretrial detainees, however, are "governed by the Due Process Clause of the Fourteenth Amendment," because they "have not been convicted of a crime and thus 'may not be punished in any matter—neither cruelly and unusually nor otherwise.'" *Darnell*, 849 F.3d at 29; *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).[8] Indeed a detainee's rights under the Fourteenth Amendment are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

Like under the Eighth Amendment, deliberate indifference pursuant to the Fourteenth Amendment has both an objective and a subjective prong. Consequently, "the official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Weyant*, 101 F.3d at 856.

The objective prong under either Amendment remains the same, *Darnell*, 849 F.3d at 30, mandating that the deprivation be, "in objective terms, sufficiently serious," *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotations omitted). The second prong requires that the official act with "a sufficiently culpable state of mind," *see Wilson v. Seiter*, 501 U.S. 294, 298 (1991), but this standard differs between the Eighth and Fourteenth Amendments, as the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015), "altered the standard for deliberate indifference claims under the Due Process Clause," *Darnell*, 849 F.3d at 30. It is now more properly considered a *mens rea* prong that requires a showing of recklessness, which is

---

[8] Consequently, to the extent Plaintiff alleges that his rights under the Eighth Amendment were violated, those claims must be dismissed with prejudice, as the protections of the Eighth Amendment are inapplicable to Plaintiff.

defined objectively. *Id.* at 32, 35. A pretrial detainee must therefore prove "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

The bulk of Plaintiff's Second Amended Complaint sounds in an assortment of claims regarding conditions-of-confinement in violation of the Fourteenth Amendment. Such claims fall into two categories—housing and medical care—and are analyzed under variations of the same standard.

**A.   Medical Care**

Plaintiff claims deliberate indifference to his medical needs against Dr. Piacente, and of the County Defendants, McLaughlin and Jacob. (*See* SAC at 4-5, 8.)

*1.   Objective Prong*

The objective prong is a two part inquiry, *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006), requiring an actual "deprivation of adequate medical care," *id.* at 279; *see Farmer v. Brennan*, 511 U.S. 825, 844-47 (1994) (reasonable care is not deprivation), and a determination that the deprivation is sufficiently serious, shown by the existence of "a condition of urgency, one that may produce death, degeneration, or extreme pain," *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("*Hathaway III*")).

To the extent that Plaintiff is claiming a categorical denial of treatment, his claims against all Defendants do not pass muster. In such instances, the Court must examine whether the "medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280. Here, Plaintiff's injury of a half an inch cut to his left pinky, (*see* SAC at 4), is not sufficiently serious for the objective prong, *Dawes v. Coughlin*, 159 F.3d 1346, 1346 (2d Cir. 1998) (noting that "a one-and-a-half-inch

laceration on [plaintiff's] elbow" not sufficiently serious); *Sonds v. St. Barnabas Hosp. Corr. Health Srvs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) ("a cut finger, even where skin is 'ripped of'" insufficient for objective prong); *see also Head-Bey v. Smith*, No. 04-CV-191(LEK/DRH), 2007 WL 274793, at *6 (N.D.N.Y. Jan. 26, 2007) (1 ½ inch laceration insufficient). Nevertheless, the Court cannot consider the severity of the injury in a vacuum. *See Chance*, 143 F.3d at 702 (noting that while the injury itself may not be serious, ignoring a five-inch gash "that is becoming infected" may give rise to an Eighth Amendment violation); *Salahuddin*, 467 F.3d at 280 ("[A]lthough we sometimes speak of a 'serious medical condition' as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability").

With respect to alleged inadequate treatment, the inquiry focuses on the alleged inadequacy "rather than the prisoner's underlying medical condition alone." *Salahuddin*, 467 F.3d at 280. Plaintiff alleges that he should have been sent to the hospital immediately and been given stitches. (*See* SAC at 4-10.) Plaintiff was seen by Jacob and Dr. Piacente. While a cut on the hand is not typically a sufficiently serious injury, Plaintiff has nevertheless met the objective, because of his resulting staph infection that developed because his wound was not closed before he was returned to intake housing. *See Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) ("[T]he failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of medical treatment."); *see also Vassallo v. City of New York*, No. 15-cv-7125(KPF), 2016 WL 6902478, at *9 (S.D.N.Y. Nov. 22, 2016) (finding inadequate treatment for diabetes "resulting in consistently and abnormally elevated blood sugar levels" sufficient for objective prong). Dr. Piacente and Defendant Jacob both declined to send Plaintiff to the hospital to get stitches for his wound open

9

and instead, gave him paper stitches and sent him back to intake housing where an open would could have become infected. The objective prong is satisfied.

Plaintiff's claim against McLaughlin, insofar as he alleges that a 20 minute delay in tending to his lacerated finger constituted deliberate indifference, (*see* SAC at 4), fails to meet the objective prong. While a delay in providing medical care can constitute deliberate indifference, such a brief delay, as a matter of law, cannot constitute deliberate indifference to the type of injury alleged by Plaintiff. *See Tatum v. City of New York*, No. 06-CV-4290(BSJ)(GWG), 2009 WL 124881, at *6 (S.D.N.Y. Jan. 20, 2009) (twenty minute delay insufficient); *Ravenell v. Van der Steeg*, No. 05-CV-4042, 2007 WL 765716, at *4 (S.D.N.Y. Mar. 14, 2007) (15-20 minute delay in treatment of fractured finger insufficient). The other aspect of Plaintiff's claim against McLaughlin likewise fails as McLaughlin's decision to have Plaintiff hold his hand over a toilet bowl to wait for the blood to stop, instead of providing him toilet paper, is not a deprivation of medical care because McLaughlin ultimately brought Plaintiff to see a nurse shortly after he injured himself, still during the same "3-11" shift on July 3, 2016 in which Plaintiff was injured. (*See* SAC at 4-5.) The claims against Defendant McLaughlin are dismissed.

### A. Subjective Prong

Though analysis of the second prong under the Fourteenth Amendment has been modified, what remains the same is that negligence, and thus medical malpractice, will not rise to the level of a constitutional violation unless the medical malpractice contains an element of intent or recklessness. *Darnell*, 849 F.3d at 36 (noting that "any § 1983 claim for a violation of due process requires proof of *mens rea* greater than mere negligence" and it must be shown that an official "acted intentionally or recklessly").

Plaintiff's allegations against Jacob are insufficient to meet the *mens rea* prong of the Fourteenth Amendment analysis. Medical malpractice, "misdiagnosis and 'the decision not to

treat based on an erroneous view that the condition is benign or trivial'" does not rise to the level of deliberate indifference. *Williams v. Williams*, No. 13-CV-3154(RA), 2015 WL 568842, at *6 (S.D.N.Y. Feb. 11, 2015); *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000) (malpractice, "bad diagnosis", "erroneous calculus of risks and costs", etc. insufficient). At worst, Jacob's conduct amounted to an erroneous calculus of the risks facing Plaintiff, insufficient to demonstrate an intentional deprivation or recklessness. Moreover, she told Plaintiff that the only person who could authorize a transfer to the hospital was the doctor, who Plaintiff saw the following day.

Plaintiff's claims against Defendant McLaughlin must also fail. Even assuming the 20 minutes in which Plaintiff waited for McLaughlin to respond to him would suffice for the objective prong, Plaintiff has failed to demonstrate that the delay was intended to prolong his pain or exacerbate his injury, or that McLaughlin acted recklessly. Simply put, the facts are wholly inadequate to demonstrate as much.

With respect to Dr. Piacente, however, the result is different. Plaintiff's allegations regarding Dr. Piacente's mental state suffice for the *mens rea* prong. In coming to this conclusion, the Court has assessed Dr. Piacente's reactions to Plaintiff's injury, the treatment he was provided, and the resulting adverse consequences. "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm," though an "actual physical injury" is not necessary to recover. *See Smith*, 316 F.3d at 187-88 (finding that defendant's conduct "in exposing an inmate to an unreasonable risk of future harm" sufficient); *see also Richardson v. City of New York*, No. 15-CV-643(LAK)(AJP), 2015 WL 7752143, at *6 (S.D.N.Y. Nov. 18, 2015) (finding that ignoring potential risk of infection was reckless), *report and recommendation adopted by*, 2016 WL 1637997 (Apr. 22, 2016). Plaintiff has alleged the requisite mental state with respect to Dr. Piacente, whose conduct cannot be boiled down to simple

11

negligence or medical malpractice. Assuming the truth of Plaintiff's allegations, Dr. Piacente agreed that Plaintiff needed stitches, (*see* SAC at 8), but told Plaintiff "that he could handle it", (*id.*), and intentionally provided an "easier and less efficacious treatment", paper stitches, *Chance*, 143 F.3d at 703 (choice of "easier and less efficacious" treatment can suffice).[9] More importantly, Dr. Piacente agreed with Plaintiff that "jails are some of the filthiest places", (*id.*), but ignored the unreasonable risk that Plaintiff's injury could become badly infected. Indeed, Plaintiff's injury did become infected, requiring him to take two trips to the hospital, a consequence that could have been avoided if Dr. Piacente had sent Plaintiff to the hospital from the outset. Plaintiff's claims against Dr. Piacente are properly pled.

## III. Housing

### A. Unsanitary Conditions

Plaintiff also appears to assert a deliberate indifference claim against Byron, Hickey, and Falco regarding the alleged unsanitary conditions in intake housing.

Claims challenging a detainee's housing conditions likewise have two prongs. "To establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,'" and those conditions should be "evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30; *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Though the Constitution "does not mandate comfortable prisons", *see Farmer*, 511 U.S. at 832, it requires that prison officials "provide humane conditions of confinement" and "must ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ," *id.* Consequently, a Plaintiff properly alleges a claim when he articulates an "objectively, sufficiently, serious . . . denial of the minimal civilized

---

[9] In *Chance*, the Court was considering an inmate's Eighth Amendment claim, which requires a higher standard for *mens rea*; consequently, conduct that meets the higher standard certainly suffices for the lower, Fourteenth Amendment objective *mens rea* standard of deliberate indifference.

12

measure of life's necessities." *Willey v. Kirkpatrick*, 801 F.3d 51, 66 (2d Cir. 2015). Where unsanitary conditions are concerned, courts look at "both the duration and the severity of the exposure." *Id.* at 68; *see also Darnell*, 849 F.3d at 30. Moreover, a pretrial detainee need not "show that [he] actually suffered from serious injuries." *Darnell*, 849 F.3d at 31. As to the second prong, a Plaintiff must demonstrate that prison officials acted "with more than mere negligence." *Walker*, 717 F.3d at 125 (quoting *Farmer*, 511 U.S. at 835) (internal quotations omitted).

Plaintiff's claims fail to meet the requisite burden. Preliminarily, Plaintiff lists a number of unsanitary conditions of confinement, including "no ventilation at all in intake housing", (SAC at 6), that he had "bite marks up and down" his leg, (*id.*), a gnats' nest was "growing in the shower", (*id.*), there "was male semen on the walls", (*id.*), a fellow detainee, Brad Smith, was "throwing around" his feces, (*id.*), and the cleaning supplies provided to the detainees were previously used to clean Mr. Brown's feces, (*id.*) Plaintiff also claims that he was in intake housing for a total of 90 days, (*id.*), and that intake housing "only holds 16 cells," (*id.* at 9.) To assess whether a constitutional violation occurred, however, this Court must understand the severity of the conditions and the duration that Plaintiff was exposed to them. *See Darnell*, 849 F.3d at 30; *see also Jackson v. Sullivan Cnty.*, 16-CV-3673(JCM), 2018 WL 1582506, at *4 (S.D.N.Y. Mar. 27, 2018) (dismissing conditions of confinement claim in absence of allegations regarding severity and duration). Plaintiff fails to plead that information. As alleged, this Court cannot ascertain whether Plaintiff was in the same cell with Mr. Smith while he was throwing his feces (as there are 16 cells in intake housing) or how often he would do so, whether the cleaning supplies were cleaned after they were used to clean up after Mr. Smith, and the amount of time Plaintiff was exposed to the conditions in the bathroom shower. This prong is insufficiently pled.

Even if Plaintiff had pled the above facts relevant to duration and severity, his claim would still be ripe for dismissal because Plaintiff cannot demonstrate the second prong of the deliberate

13

indifference test. The Second Circuit has explicitly held that, with respect to conditions of confinement, the defendant-official must have acted recklessly or intentionally, *see Darnell*, 849 F.3d at 35; negligence will not suffice, *Jackson*, 2018 WL 1582506, at *4. In the absence of allegations suggesting that Byron, Hickey, or Falco intentionally subjected Plaintiff to the conditions or recklessly failed to act when they knew or should have known that the conditions posed an excessive risk to his health or safety, Plaintiff's claims cannot stand. *See id.* (finding lack of similar allegations defective to the claim). Indeed, Plaintiff's only allegations regarding Byron's state of mind are that he did not "car[e] for to [sic] change [the detainees'] cleaning equipment", that he "knew of the inhumane environment", and "knew that [Plaintiff] later did not receive adequate medical care . . . and he did nothing to move [Plaintiff] away from such bacteria infested area." (*See* SAC at 6.) As to Defendants Hickey and Falco, Plaintiff merely alleges that they knew of the unsanitary conditions and "did not care" and "put [him] back in intake housing" after he was released from the hospital. (*Id.*) Such allegations are conclusory at best, and fail to demonstrate that Byron, Hickey, or Falco acted in a manner that rose above the level of negligence. Plaintiff's claims must be dismissed; nevertheless, because Plaintiff's deliberate indifference claims against these Defendants suffers from a facial malady, he will be granted leave to re-plead.

### B. Insufficient Mirror

To the extent Plaintiff alleges that his constitutional rights were violated because the mirror provided to him was not clear, such allegations do not give rise to a cognizable federal claim. While "the failure to regularly provide prisoners with[, *inter alia*,] access to a mirror . . . constitutes a denial of personal hygiene and sanitary living conditions, *see Myers v. City of New York*, No. 11-CV-8525(PAE), 2012 WL 3776707, at *8 (S.D.N.Y. Aug. 29, 2012), Plaintiff fails to allege an actual deprivation, nor one that rises to the level of a "denial of the minimal

14

civilized measure of life's necessities," *Willey v. Kirkpatrick*, 801 F.3d at 66. Such a claim is dismissed.

## IV.    Access to the Courts[10]

Plaintiff also appears to raise two claims that sound in principals of access to the courts. Specifically, Plaintiff alleges that Byron interfered with the grievance procedure, (*see* SAC at 6-7), and that Falco and Hickey interfered with his ability to allege a Section 1983 claim by failing to photograph his injury, (*id.* at 7.) Neither claim survives a motion to dismiss.

To state a First Amendment access to the courts claim, a plaintiff must demonstrate "that the defendant 'took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim.'" *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (alterations in original).

### A.    Interference With the Grievance Procedure

Any claim against Byron that he violated Plaintiff's constitutional rights by interfering with the grievance process cannot stand. "[I]nmate grievance programs created by state law are not required by the Constitution"; thus, a claim alleging interference with the grievance procedures is not cognizable under Section 1983, *Harris v. Westchester Cnty. Dep't of Corr.*, No 06-CV-2011(RJS), 2008 WL 953616, at *5 (S.d.N.Y. Apr. 3, 2008); *see also Rickett v. Orsino*, No. 10-CV-5152(CS)(PED), 2013 WL 1176059, at *20 (S.D.N.Y. Feb. 20, 2013), *report and recommendation adopted by*, 2013 WL 1155354 (Mar. 21, 2013); *Mimms v. Carr*, No. 09-CV-5740(NGG)(LB), 2011 WL 2360059, at *10 (E.D.N.Y. Jun. 9, 2011), "absent a showing that the defendants' actions in that regard result in actual prejudice to the inmate's pursuit of a legal action," *Abney v. Jopp*, 655 F. Supp. 2d 231, 234 (W.D.N.Y. 2009); *see also Banks v. Cnty. of*

---

[10] Plaintiff also alleges that his Sixth Amendment rights were violated. "[A] pre-trial detainee's Sixth Amendment rights are infringed when prison regulations 'unjustifiably obstruct,' 'infringe,' 'unreasonably burden,' or 'significantly interfere' with the detainee's access to counsel." *Perez v. Ponte*, 236 F. Supp. 3d 590, 617 (E.D.N.Y. 2017). Plaintiff's complaint contains no allegations that his access to counsel was interfered with whatsoever. Any Sixth Amendment claims must be dismissed with prejudice.

*Westchester*, 168 F. Supp. 3d 682, 692 (S.D.N.Y. 2016) (noting that plaintiff must demonstrate that "defendant's actions resulted in an actual injury"). Plaintiff's conclusory allegations fail to demonstrate that he was actually prejudiced in the pursuit of any legal action. He has successfully pursued this Section 1983 action in federal court, as this Court is permitting Plaintiff to re-allege his claims against Byron as they concern the unsanitary conditions central to his grievances. An access to the courts claim cannot stand.

### B. Refusal to Take Photographs

Plaintiff's attempt to allege that Hickey and Falco violated his constitutional rights by failing to take photographs of his injuries likewise fails. A refusal to take a photograph requested by a plaintiff does not rise to the level of a constitutional violation. *See Chavis v. Chappius*, No. 06-CV-543S, 2015 WL 1472117, at *15 (W.D.N.Y. Mar. 31, 2015). Moreover, even if Plaintiff could assert it as the basis of an access to the courts claim, it has not hindered his pursuit of a lawsuit. Despite not having a photograph of his injury, Plaintiff brought this civil rights lawsuit, alleging, *inter alia*, inadequate medical care. This Court's dismissal of those claims against the County Defendants had nothing to do with Plaintiff's lack of photographic evidence, that the conduct did not rise to the level of a constitutional violation. Moreover, Plaintiff's allegations sufficed to move his case forward on a deliberate indifference claim against Dr. Piacente; the merits of this claim will not rise and fall on the existence of a photograph of Plaintiff's injury. Plaintiff's claims against Hickey and Falco must be dismissed.

### V. <u>**Monell Liability**</u>

Defendants also argue that Rockland County is not a proper party to this lawsuit because Plaintiff has failed to properly allege *Monell* liability. This Court agrees.

A Plaintiff can only recover from a municipality if he demonstrates a claim pursuant to *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1976) (a "*Monell*" claim). To state such a

claim, plaintiff "must allege that 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers.'" *Ceparano v. Suffolk Cnty. Dep't of Health*, 485 F. App'x 505, 508 (2d Cir. 2012) (quoting *Monell*, 436 U.S. at 690) (alterations in original). Critically, a Plaintiff must prove both that there was a constitutional violation *and* that the constitutional violation "was a result of a municipal policy or custom." *Brown v. City of New York*, No. 13-CV-6912(TPG), 2016 WL 616396, at *2 (S.D.N.Y. Feb. 16, 2016) (emphasis added). A municipality will not be held liable under the doctrine of respondeat superior. *Monell*, 436 U.S. at 691.

Where, as here, the complaint contains allegations of a "single incident, especially one involving only actors below the policy-making level" *Monell* liability cannot be sustained. *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 439 (S.D.N.Y. 2016) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)); *Toliver v. Office-Dep't of Corr. NYC*, No. 10-CV-5354(DAB), 2013 WL 3783727, at *5 (S.D.N.Y. July 9, 2013). Plaintiff's SAC contains no allegations from which this Court could infer the existence of a *Monell* claim. None of the Defendants appear to be in a policy-making position. Moreover, the SAC does not contain a single allegation tying any of the alleged unlawful conduct to an overarching policy or custom. *See Simpson*, 159 F. Supp. 3d at 439 (dismissing *Monell* claim where "SAC does not contain a single allegation—even a conclusory one—that a policy or custom" caused plaintiff's injury); *see also Moton v. City of New York*, No. 15-CV-6485(GBD)(JLC), 2016 WL 1729046, at *4 (S.D.N.Y. Apr. 26, 2016) (no *Monell* liability in absence of allegations "that the harm was brought about by

any municipal policy"), *report and recommendation adopted by*, 2016 WL 3554993 (Jun. 24, 2016). Plaintiff's claim against Rockland County must be dismissed.

## VI. State Law Claims

The Court need not linger on whether to assert supplemental jurisdiction over Plaintiff's state law claims against Defendants McLaughlin, Jacob, Hickey, Falco, Byron, and Rockland County. These claims must fail as the Court has already determined that the Section 1983 claims are ripe for dismissal. *See Sklodowska-Grezak v. Stein*, 236 F. Supp. 3d 805, 810 (S.D.N.Y. 2017) (declining to exercise supplemental jurisdiction over state law claims where federal claims dismissed); *Mackenzie v. Donovan*, 375 F. Supp. 2d 312, 320 (S.D.N.Y. 2005). Such claims are dismissed without prejudice, and to the extent Plaintiff can cognizably plead same, he can do so in state court.

## VII. Leave to Amend

Though "[l]eave to amend should be freely granted", this Court declines to allow Plaintiff leave to amend his claims against Defendants Jacob, McLaughlin, and Rockland County, as an amendment would be futile. *See Nognou v. Mayrose*, 400 F. App'x 617, 620 (2d Cir. 2010) (summary order) (quoting *Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002)). The conduct of Jacob and McLaughlin do not rise above the level of negligence and medical malpractice; thus, it is not actionable and no amendment would render it otherwise. *See id.* (affirming denial of leave to amend on ground that "negligence and medical malpractice" not recoverable under Section 1983). Further, as stated, *supra*, Plaintiff is not permitted to re-plead his claims against Hickey and Falco as they pertain to the refusal to take a photograph of his injury, as such conduct is not actionable under the Constitution.

Nevertheless, "a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotations and alterations omitted). With respect to Plaintiff's claims against Byron, Hickey, and Falco for deliberate indifference to the conditions of his confinement, Plaintiff may re-plead with additional facts regarding the severity and duration of the unsanitary conditions, as well as interactions that Plaintiff had with these Defendants that would demonstrate the requisite *mens rea*.

## CONCLUSION

In line with the foregoing, Dr. Piacente's Motion is **DENIED**, as the claim against Dr. Piacente for inadequate medical care is properly pled. Dr. Piacente is hereby directed to Answer Plaintiff's SAC on or before August 21, 2018.

The County Defendants' Motion, however, is **GRANTED** in accordance with the following:

1. The Second Amended Complaint is dismissed *with* prejudice against Defendants Jacob, McLaughlin, and Rockland County;

2. The claims against Hickey and Falco based on a refusal to take a photograph of Plaintiff's injury are dismissed *with* prejudice;

3. The claim against Byron alleging an interference with Plaintiff's access to the courts is dismissed *with* prejudice;

4. The claims against Byron, Hickey, and Falco alleging a deliberate indifference to Plaintiff's conditions of confinement are dismissed *without* prejudice and Plaintiff is granted 30 days to re-plead these claims.

Should Plaintiff choose to file a Third Amended Complaint against Byron, Hickey, and Falco for deliberate indifference to his conditions of confinement, he must do so on or before August 7, 2018 and in conformity with this Opinion. Failure to do so will result in a dismissal of the claims against Byron, Hickey, and Falco with prejudice.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 26 and 34. The Clerk of Court is further respectfully directed to terminate Defendants Bill McLaughlin, Mariamma Jacob, and Rockland County, as all claims against them are dismissed with prejudice. The Clerk of the Court is also directed to mail a copy of this Opinion and Order to Plaintiff at David Christopher Figueroa, Rockland County Correctional Center, 55 New Hempstead Road, New City, New York 10956 and change Plaintiff's address on ECF to reflect same. Plaintiff is reminded that it is his obligation to inform the Court when his address changes.

Dated: July 5, 2018
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge